# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN M. GARDNER, an individual,<br><br>         Plaintiff,<br><br> v.<br><br>CAFEPRESS INC., a Delaware Corporation, et al.,<br><br>         Defendants. | CASE NO. 3:13-cv-1108-GPC-JLB<br><br>**ORDER:**<br><br>**(1) GRANTING IN PART AND DENYING IN PART CAFEPRESS'S MOTION FOR SUMMARY JUDGMENT ON LIABILITY OR, ALTERNATIVELY, FOR PARTIAL SUMMARY JUDGMENT ON DAMAGES;**<br><br>**[ECF No. 96]**<br><br>**(2) GRANTING CAFEPRESS'S MOTION TO STRIKE;**<br><br>**[ECF No. 128]**<br><br>**(3) VACATING HEARING DATE** |

## I. INTRODUCTION

Before the Court is Defendant CafePress Inc.'s ("CafePress") Motion for Summary Judgment on Liability, or, Alternatively, for Partial Summary Judgment on Damages. (ECF No. 96.) Plaintiff Steven M. Gardner ("Gardner") opposes. (ECF No. 117.) CafePress replied to Gardner's opposition. (ECF No. 127.)

The parties have fully briefed the motion. (ECF Nos. 96, 117, 127.) The Court finds the motion suitable for disposition without oral argument pursuant to Civil Local

Rule 7.1(d)(1). For the reasons discussed below, the Court GRANTS IN PART AND DENIES IN PART CafePress's motion for summary judgment or partial summary judgment.

## II. PROCEDURAL HISTORY

On May 8, 2013, Gardner filed a complaint against CafePress alleging copyright infringement. (ECF No. 1.) On May 13, 2013, Gardner filed a first amended complaint. (ECF No. 3.) On October 14, 2014, Gardner filed a second amended complaint (the "SAC"). (ECF No. 112.)

On August 28, 2014, CafePress filed a motion for summary judgment, or alternatively partial summary judgment on damages. (ECF No. 96.) On October 24, 2014, Gardner filed an opposition to CafePress's motion. (ECF No. 117.) On November 7, 2014, CafePress filed a response to Gardner's opposition. (ECF No. 127.)

On November 7, 2014, Gardner filed objections to the Declaration of Lindsay Moore, (ECF No. 96-2). (ECF No. 129.) On November 8, 2014, CafePress filed a motion to strike three documents: (1) the declaration of Darren J. Quinn, (ECF No. 119); (2) Gardner's response to CafePress's statement of undisputed facts, (ECF No. 124); and (3) Gardner's objections to the declaration of Lindsay Moore, (ECF No. 125). (ECF No. 128.)

## III. FACTUAL BACKGROUND

CafePress is an e-commerce vendor that operates http://www.cafepress.com. (ECF No. 96-2 ¶ 3.) CafePress allows users to upload images of artwork, slogans, and designs for printing on items such as shirts, bags, and mugs. (*Id.* ¶ 5.) These images are uploaded at the direction of CafePress users and are stored on CafePress's servers through its website. (*Id.* ¶¶ 3, 8.) CafePress provides its users services including "online service, printing, shipping and related services." (*Id.* ¶ 38.) CafePress users can also offer the uploaded images for sale to third parties who then select one of CafePress's unbranded items on which to print the image. (*Id.* ¶ 5.) These items or images are sold through either: (1) a user's "virtual shop" on CafePress's website, (2)

the CafePress Marketplace on CafePress's website, or (3) a CafePress "feed" on a third party website such as http://www.amazon.com or http://www.ebay.com . (*Id.* ¶ 16.) Once a customer purchases an item bearing a CafePress user's uploaded image, CafePress's employees then "hand print[]" the item. (ECF No. 119 ¶ 14; ECF No. 119-14.)

Gardner is the holder of U.S. copyright registrations in four works at issue in this case: (1) "Alaska Wildlife"; (2) "Polar Bears 10 Hidden Bears"; (3) "Find 12 Tigers"; and (4) "Harmony of Wolves." (ECF Nos. 118-1, 118-2, 118-3, 118-4, Exs. A–D.) Several CafePress users, including Beverly Teall, Lakin Southall, and PrideAndMore, uploaded copies of Gardner's works to CafePress's service. (ECF No. 119 ¶ 2.) These CafePress users then sold items bearing copies of Gardner's works through CafePress's service on http://www.cafepress.com and other websites. (ECF No. 119 ¶ 3.) CafePress generated approximately $6,000[1] in revenue from these allegedly infringing sales. (ECF No. 96-2 ¶¶ 38, 42, 43.)

CafePress also purchased advertisements which display copies of Gardner's works. (*See, e.g.*, ECF Nos. 118-7, 118-8, 118-9, 118-10, 118-11, 118-12, Exs. G–L) CafePress generated revenue from users who clicked on these advertisements. (ECF No. 121, Ex. 4.)

### IV. LEGAL STANDARD

Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986); FED. R. CIV. P. 56. Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

---

[1] ECF No. 96-2 ¶ 43 appears to contain two typos referring to this number as $6,320 rather than $6,230 which would be the number obtained from adding the two revenue figures in ECF No. 96-2 ¶¶ 38, 42. In any event, whether the amount is $6,320 or $6,230 is immaterial for the purposes of this order.

and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material when it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial. *Id.* at 322–23. If the moving party fails to bear the initial burden, summary judgment must be denied and the Court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citing FED. R. CIV. P. 56 (1963)). If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. *Id.* at 325. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing FED. R. CIV. P. 56 (1963)). In making this determination, the Court must "view [] the evidence in the light most favorable to the nonmoving party." *Fontana v. Haskin*, 262 F.3d 871, 876 (9th Cir. 2001). The Court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact. *Anderson*, 477 U.S. at 255.

## V. EVIDENTIARY OBJECTIONS

CafePress objects to paragraphs 2, 4, 5, 6, and 9, and exhibits 1, 2, 8, 12, and 13 of the declaration of Darren J. Quinn, (ECF No. 119), for lack of personal knowledge,

speculation, relevance, and lack of authentication. (ECF No. 128-1, at 1–5.) As the objected to paragraphs and exhibits are immaterial to the Court's ruling on this motion, the Court has not considered the challenged evidence. To the extent that any objected-to-evidence is relevant and relied on by the court herein, the court overrules any asserted objections to that evidence.

CafePress argues that Gardner's response to CafePress's statement of undisputed facts, (ECF No. 124), and Gardner's objections to the declaration of Lindsay Moore, (ECF No. 125), should be stricken because they were filed after the deadline. (ECF No. 128-1, at 5.) Generally, good cause must be shown to extend a deadline. *See* FED. R. CIV. P. 6(b)(1). This Court entered a briefing schedule setting the deadline to oppose CafePress's motion as October 24, 2014. (ECF No. 98.) Gardner did not file his response to CafePress's statement of facts and his objections to the declaration of Lindsay Moore until November 7, 2014, approximately two weeks after the deadline to oppose and (*See* ECF Nos. 98, 124, 125.) To date, Gardner has not responded to CafePress's motion to strike and thus has not shown good cause. Accordingly, the Court GRANTS CafePress's motion to strike and strikes ECF Nos. 124 and 125.

## VI. DISCUSSION

### A. Contributory Infringement

CafePress argues that the undisputed facts show that it is not liable for contributory infringement. (ECF No. 96-1, at 14–17.) Indeed, Gardner states that he "does not contend[] that CafePress is liable for contributory infringement." (ECF No. 117, at 21.) Accordingly, the Court GRANTS CafePress's motion for summary judgment on Gardner's contributory infringement cause of action.

### B. Direct Infringement

#### 1. Direct Liability

There are three elements to a prima facie case of direct infringement: (1) ownership of the allegedly infringed material, (2) violation of at least one exclusive right granted to copyright holders under 17 U.S.C. § 106, and (3) volitional conduct by

the defendant. *Fox Broad. Co. v. Dish Network L.L.C.*, 747 F.3d 1060, 1067 (9th Cir. 2014) (holding that a direct infringement claim requires that "the defendant cause the copying") (citing *Cartoon Network LP v. CSC Holdings, Inc.* ("*Cablevision*"), 536 F.3d 121, 130 (2d Cir. 2008)); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1159 (9th Cir. 2007). 17 U.S.C. § 106 grants four rights to the holders of graphical copyrights: (1) reproduction, (2) derivative creation, (3) distribution, and (4) public display. 17 U.S.C. § 106. Gardner argues that CafePress violated all four rights granted to him as a holder of a graphical copyright. (ECF No. 117, at 6–13.)

As an initial matter, the parties dispute whether the Ninth Circuit has ruled on whether direct infringement requires volitional conduct. (*Compare* ECF No. 117, at 14 *with* ECF No. 127, at 2–3.) Citing *Oppenheimer v. Allvoices, Inc.*, No. 14-cv-0499-LB, 2014 WL 2604033, at *6 (N.D. Cal. June 10, 2014), Gardner argues that the Ninth Circuit has not yet addressed this issue. (ECF No. 117, at 14.) Gardner further argues that the Supreme Court's recent decision in *American Broadcasting Cos. v. Aereo, Inc.*, 134 S. Ct. 2498 (2014), further militates against the volitional conduct requirement. (*Id.* at 15–16.) However, Gardner's argument ignores the Ninth Circuit's decision in *Fox*. *See* 747 F.3d 1060. The fact that the magistrate judge in *Oppenheimer* overlooked *Fox* does not affect the controlling force of *Fox*. *See* 2014 WL 2604033, at *6. Moreover, the Supreme Court expressly decided not to address the volitional conduct issue which leaves *Fox* undisturbed. *See Aereo*, 134 S. Ct. 2498, 2507 ("In other cases involving different kinds of service or technology providers, a user's involvement in the operation of the provider's equipment and selection of the content transmitted may well bear on whether the provider performs within the meaning of the Act."). As this Court is bound by Ninth Circuit precedent and *Fox* is still good law, the Court finds that volitional conduct is a required element of direct infringement. *See* 747 F.3d at 1067.

The parties do not dispute the first two elements of direct infringement: (1) that Gardner is the owner of the copyrights, and (2) that at least one of Gardner's rights in those copyrights was violated. (*See* ECF No. 117, at 1, 6–13; *see also* ECF No. 127,

at 5 ("[CafePress] assumes for the purposes of this motion that there was some underlying act of infringement as a result of the alleged misconduct of Lakin Southall and Beverly Teall.") However, the parties do dispute whether CafePress engaged in volitional conduct. (*Compare* ECF No. 117, at 16 *with* ECF No. 127, at 5.)

CafePress argues that it is similar to the satellite and cable television providers whose users were the cause of the infringement in *Fox* and *Cablevision*. (ECF No. 96-1, at 10–11.) Gardner argues that CafePress is similar to the copy shop operator who physically made copies at a customer's request in *Princeton Univ. Press v. Mich. Document Servs., Inc.*, 99 F.3d 1381 (6th Cir. 1996) (en banc). (ECF No. 117, at 15–16.)

In *Cablevision*, a cable television provider developed a digital video recorder ("DVR") that allowed its customers to record copies of cable television programs on hard drives owned by the provider and housed at the provider's premises. 536 F.3d at 124. The provider's DVR software was entirely automated, i.e. customer commands to copy the television programs were issued directly to the provider's software system tha automatically obeyed the command with no human involvement. *Id.* at 131–32. Similarly, in *Fox*, a satellite television provider developed a feature for its DVR that allowed its customers "to record any and all primetime programming on the four major broadcast networks . . . every night of the week." 747 F.3d at 1064. While the provider did exercise some discretion, such as determining the start and end times for the primetime block, the customer still had to enable the feature which then automatically recorded the primetime programming to the customer's DVR. *Id.* at 1065. In both cases, the courts found that because the customer was the one who chose whether or not to record the programming, the provider had not engaged in volitional conduct. *Cablevision*, 536 F.3d at 131–33; *Fox*, 747 F.3d at 1067–68.

In *Princeton*, a college professor gave copyrighted material to a human employee at a copy shop. 99 F.3d at 1384. The copy shop's employee then performed the physical acts such as printing copies and selling the copies to students. *Id.* The Sixth Circuit

found that this constituted a prima facie case of copyright infringement. *See id.* at 1383. Thus the issue in this case is whether CafePress is more similar to a copy shop that "makes photocopiers available to the public on its premises" or to a copy shop where customers request a copy from the copy shop's human employees "who then volitionally operate[] the copying system to make the copy." *See Cablevision*, 536 F.3d at 131–32.

While some of the CafePress process is similar to the DVR cases—specifically where users upload images to the site and customers request items—a significant portion of the process is done by CafePress itself, namely the production and sale of the allegedly infringing items. In making the allegedly infringing items, CafePress's employees respond to a customer request to purchase the item. CafePress does not contend that its production facility and shipping process are completely automated and thus devoid of human employees engaging in volitional conduct. CafePress's employees, not its customers, are the ones operating the machinery used by CafePress to create the allegedly infringing items.

As the evidence appears to show that CafePress does engage in at least some volitional conduct, the Court DENIES CafePress's motion for summary judgment on Gardner's direct liability cause of action.

**2. Vicarious Liability**

There are two elements to a prima facie case of vicarious infringement: (1) "direct financial benefit" from third party's direct infringement, and (2) "the right ability to supervise" a third party's infringing activity. *Ellison v. Robertson*, 357 F.3d 1072, 1078 (9th Cir. 2004). A service provider receives a "direct financial benefit" when "the infringing activity constitutes a draw for [customers], not just an added benefit." *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1117 (9th Cir. 2007) (citation and quotation marks omitted).

**a. Direct Financial Benefit**

Gardner argues that the "direct financial benefit" is CafePress paying image

1  uploaders a 10% royalty and that advertising bearing images of Gardner's copyright
2  works increased CafePress's sales. (ECF No. 117, at 21.) Citing *A&M Records, Inc. v.*
3  *Napster, Inc.*, 239 F.3d 1004, 1119–22 (9th Cir. 2001), CafePress argues that CafePress
4  is distinguishable from Napster "where 90% or more of [Napster's] files . . . were found
5  to be infringing." (ECF No. 127, at 2 n.4.) However, CafePress's attempt to distinguish
6  *Napster* and citation to the 90% figure implies that the draw must be "substantial," a
7  requirement that the Ninth Circuit has rejected, holding that "[t]here is no requirement
8  that the draw be 'substantial.'" *See Ellison*, 357 F.3d at 1079 ("The essential aspect of
9  the 'direct financial benefit' inquiry is whether there is a causal relationship between
10 the infringing activity and any financial benefit a defendant reaps, regardless of *how*
11 *substantial* the benefit is in proportion to a defendant's overall profits."). It is
12 undisputed that a certain number of CafePress customers saw ads bearing images of
13 Gardner's copyrighted works, clicked through those ads, and generated revenue for
14 CafePress and that some CafePress customers bought items bearing images of
15 Gardner's copyright works. (*See* ECF No. 121, Ex. 4; ECF No. 98-2 ¶ 38.) Though it
16 is unclear whether those customers clicked the ads or bought the items because of the
17 images of Gardner's copyrighted works or because of some other reason, that
18 determination is for the trier of fact. At the summary judgment stage, the fact that at
19 least some of CafePress's customers bought the items and clicked those ads, thus
20 generating revenue for CafePress, creates a dispute of material fact as to whether the
21 infringing activity drew customers and thus whether there was a "direct financial
22 benefit." *See Ellison*, 357 F.3d at 1079.

### b. Control

24 A service provider has "the right and ability to control" where it "exert[s]
25 substantial influence on the activities of users." *UMG Recordings, Inc. v. Shelter*
26 *Capital Partners LLC*, 718 F.3d 1006, 1030 (9th Cir. 2013) (quoting *Viacom Int'l, Inc.*
27 *v. YouTube, Inc.*, 676 F.3d 19, 38 (2d Cir. 2012)). "'Substantial influence' may include
28 . . . high levels of control over activities of users. . . . [o]r it may include purposeful

conduct." *Id.* at 1030.

Gardner argues that "CafePress has complete control over what products are displayed and sold on its CafePress Marketplace (www.cafepress.com) and related feeds to Amazon, eBay and other major retailers such as Wal-Mart and Kmart." (ECF No. 117, at 20.) CafePress argues that its infringement prevention is an "after-the-fact ability to remove or black access to infringing activities" that "does not constitute an ability to control or supervise." (ECF No. 96-1, at 18 (quoting *Ellison v. Robertson*, 189 F. Supp. 2d 1051, 1060 (C.D. Cal. 2002).) Essentially, CafePress is arguing that its activities are similar to those of Amazon or eBay where the service provider was not "actively involved" in the sale of allegedly infringing material. *See, e.g.*, *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1110 (W.D. Wash. 2004); *Hendrickson v. Amazon.com, Inc.*, 298 F. Supp. 2d 914, 918 (C.D. Cal. 2003); *Hendrickson v. eBay, Inc.*, 165 F. Supp. 2d 1082, 1094 (C.D. Cal. 2001).

CafePress's business is distinguishable from both companies. For instance, eBay is "not actively involved in the listing, bidding, sale and delivery of any item offered for sale on its website" and "does not have any control over the allegedly infringing items." *Hendrickson v. eBay, Inc.*, 165 F. Supp. 2d at 1094. Similarly, Amazon "merely provide[s] the forum for an independent third party seller to list and sell his merchandise" and is "not actively involved in the listing." *Hendrickson v. Amazon.com, Inc.*, 298 F. Supp. 2d at 918. In contrast, the evidence appears to show that CafePress does have active control over at least some of the allegedly infringing items during the process in which CafePress produces and then ships those items to customers. While CafePress's actions in response to allegedly infringing uploads may be similar to Amazon and eBay where it is not actively involved and can only engage in after-the-fact removal and access blocking, CafePress's production of allegedly infringing items at its production facility does appear to be "purposeful conduct" such that CafePress has the "right and ability to control." (*See* ECF No. 119-14, Ex. 14); *see also UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d at 1030.

1    As the evidence surrounding both elements are disputed, the Court DENIES
2 CafePress's motion for summary judgment on Gardner's vicarious liability cause of
3 action.
4 **C. Damages**
5    In the alternative, CafePress seeks partial summary judgment establishing the
6 maximum potential damages as $405. (ECF No. 96-1, at 19.) 17 U.S.C. § 504 allows
7 a copyright plaintiff ro recover "actual damages and any additional profits of the
8 infringer."[2] 17 U.S.C. § 504(a)(1). While expenses may be deducted from gross
9 revenue, the burden of proof for deductible expenses is on the infringer. 17 U.S.C. §
10 504(b). Gardner argues that CafePress's profits from alleged infringement are disputed
11 because: (1) the revenue amount argued by CafePress does not include any revenue
12 from the allegedly infringing advertising, and (2) CafePress has not satisfied its burden
13 of proof for expenses. (ECF No. 117, at 21–22.) CafePress argues that Gardner has
14 failed to bear his burden of proving that the alleged infringement in the advertisements
15 was the cause of the approximately $436 in revenue generated from that advertising.
16 (ECF No. 127, at 9–10.)
17    CafePress's only support for its claimed expenses is the declaration of its
18 "Intellectual Property Manager." (*See* ECF No. 96-2 ¶ 43.) CafePress has neither
19 broken down what types of expenses are being claimed nor shown whether such
20 expenses are directly related to the allegedly infringing and which are overhead. *See*
21 *Kamar Intern., Inc. v. Russ Berrie and Co.*, 752 F.2d 1326, 1332 (9th Cir. 1984)
22 (Overhead expenses are deductible "only when the infringer can demonstrate it was of
23 actual assistance in the production, distribution or sale of the infringing product" which
24 is a "factual determination."). Accordingly, the Court finds that CafePress has failed
25 to carry its burden regarding expenses and thus DENIES CafePress's alternative

---

[2] While copyright plaintiffs can potentially recover statutory damages and attorneys' fees, the Court has previously ruled that Gardner cannot recover these. (*See* ECF No. 48, at 16.) Copyright plaintiffs can also potentially recover actual damages, however Plaintiff appears not to be pursuing such damages. (*See* ECF No. 96-15, Ex. C, at 3 ("Plaintiff is not seeking any damages under 17 U.S.C. § 504(b).").)

motion for partial summary judgment on damages.

## VII. CONCLUSION AND ORDER

For the reasons stated above, **IT IS HEREBY ORDERED** that:

1. CafePress's Motion for Summary Judgment on Liability or, Alternatively, Partial Summary Judgment on Damages, (ECF No. 96), is **GRANTED** as to Gardner's contributory infringement cause of action, **DENIED** as to Gardner's direct liability cause of action, **DENIED** as to Gardner's vicarious liability cause of action, and **DENIED** as to damages;

2. CafePress's Motion to Strike, (ECF No. 128), is **GRANTED** and ECF Nos. 124 and 125 are **STRICKEN**; and

3. The hearing set for December 5, 2014, is **VACATED**.

DATED:  December 4, 2014

HON. GONZALO P. CURIEL
United States District Judge