# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN M. GARDNER, an individual,<br><br>                    Plaintiff,<br><br>  v.<br><br>CAFEPRESS INC., a Delaware Corporation, et al.,<br><br>                    Defendants. | CASE NO. 3:13-cv-1108-GPC-JLB<br>CASE NO. 3:14-cv-0792-GPC-JLB<br><br>**ORDER:**<br><br>**(1) DENYING JOINT EX PARTE MOTION AND STIPULATION TO VACATE PRIOR RULINGS IN SUPPORT OF THE PARTIES' CONDITIONAL SETTLEMENT AGREEMENT;**<br><br>**[ECF No. 149]**<br><br>**(2) EXTENDING CERTAIN DEADLINES** |
| STEVEN M. GARDNER, an individual,<br><br>                    Plaintiff,<br><br>  v.<br><br>CAFEPRESS INC., a Delaware corporation, PRIDEANDMORE, a person or business, TELLAPART, INC., a Delaware corporation,<br><br>                    Defendants. | |

## I. INTRODUCTION

Before the Court is Plaintiff Steven Gardner and Defendant CafePress Inc.'s ("CafePress") (collectively, the "parties") Joint Ex Parte Motion and Stipulation to Vacate Prior Rulings in Support of the Parties' Conditional Settlement Agreement. (ECF No. 149.) The parties seek vacatur of two interlocutory orders, (ECF Nos. 48, 132), and state that they have reached a settlement agreement that is contingent upon the Court granting vacatur. (ECF No. 149-1, at 1.) If the Court does not vacate both orders, the parties state that they will instead continue to litigate this case. (*Id.*) Finding that the equities in this case do not favor vacatur and having serious concerns regarding vacatur pursuant to contingent settlements, the Court **DENIES** the parties' motion to vacate.

## II. DISCUSSION

### A. Standard of Review

Under Federal Rule of Civil Procedure 54(b), district courts may, at any time prior to entry of final judgment, vacate interlocutory orders when it is "consonant with equity" to do so. *John Simmons Co. v. Grier Bros. Co.*, 258 U.S. 82, 91 (1922); *see also* FED. R. CIV. P. 54(b). However, neither the Ninth Circuit nor the Supreme Court has articulated the standard applicable to pre-judgment settlement-contingent vacatur under Rule 54(b). Though *post-judgment* vacatur under Federal Rule of Civil Procedure 60(b) is generally held to a higher standard than *pre-judgment* vacatur under Rule 54(b), *see Persistence Software, Inc. v. Object People*, Inc., 200 F.R.D. 626, 627 (N.D. Cal. 2001), Supreme Court and Ninth Circuit precedent in the post-judgment vacatur context is instructive. *See U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18 (1994); *Am. Games, Inc. v. Trade Prods., Inc.*, 142 F.3d 1164 (9th Cir. 1998).

In *Bonner Mall*, an appellant moved to vacate a lower court judgment after the litigants had settled while the case was on appeal. 513 U.S. at 20. Because the appellant had "voluntarily forfeited his legal remedy" of having the judgment overturned by an appellate decision, the Supreme Court found that vacatur was inappropriate. *Id.* at 25.

1  The Supreme Court reasoned that appellants who destroy their own right to appeal
2  should not be allowed to employ vacatur as a "refined form of collateral attack" on the
3  lower court judgment. *Id.* at 27. The appellant argued that liberal vacatur standards
4  encouraged settlement, but the Supreme Court was skeptical that a lower standard
5  would promote settlement since some litigants "may think it worthwhile to roll the dice
6  rather than settle . . . if, but only if, an unfavorable outcome can be washed away by a
7  settlement-related vacatur." *Id.* at 28. Ultimately, the Supreme Court held that appellate
8  court vacatur of lower court judgments is proper only in the presence of "exceptional
9  circumstances." *Id.* at 29. Though the Supreme Court did not decide what standard a
10 district court should apply to vacatur of its own judgment, the Ninth Circuit has since
11 addressed this gap. *See Am. Games*, 142 F.3d 1164.

12 In *American Games*, two opposing corporate litigants merged, thereby mooting
13 their case. *Id.* at 1165–66. Finding that the case fell "somewhere between *Bonner Mall*
14 (mootness by settlement) and *Munsingwear* (mootness by happenstance)," the district
15 court equitably balanced "the hardships and the public interests at stake, which it
16 concluded weighed in favor of vacatur" because mooting the lawsuit was only
17 incidental to the merger. *Am. Games*, 142 F.3d at 1166, 1170. The Ninth Circuit
18 affirmed, holding that a district court should apply "an equitable balancing test to
19 determine whether to vacate its own unreviewed judgment, mooted by voluntary action
20 of the parties, rather than applying *Bonner Mall*'s 'exceptional circumstances' test." *Id.*
21 at 1167.

22 District courts post-*American Games,* noting Rule 54(b)'s generally more lenient
23 standard, have tended to apply equitable balancing to pre-judgment settlement-
24 contingent vacatur motions. *See, e.g.*, *Cuviello v. Cal Expo*, No. 2:11-cv-2456-KJM-
25 EFB, 2014 WL 1379873, at *4 (E.D. Cal. Apr. 8, 2014); *RE2CON, LLC v. Telfer Oil
26 Co.*, No. 10-cv-0786-KJM-KJN, 2013 WL 1325183, at *3 (E.D. Cal. Mar. 29, 2013);
27 *De La O v. Arnold-Williams*, Nos. 04-cv-0192-EFS, 05-cv-0280-EFS, 2008 WL
28 4192033, at *1 (E.D. Wash. Aug. 27, 2008). With respect to the decisions of other

district courts, this Court is skeptical that equitable balancing is the appropriate standard as the context and implications of such motions merit heightened scrutiny, even beyond Rule 54(b)'s ordinarily lenient standard. First, the specific result that equitable balancing is concerned with, an unfair preclusive effect, *see Ringsby Truck Lines, Inc. v. W. Conference of Teamsters*, 686 F.2d 720, 722 (9th Cir. 1982), does not exist in the context of interlocutory orders. *See Rein v. Providian Financial Corp.*, 270 F.3d 895, 899 (9th Cir. 2001) (claim preclusion, or res judicata, requires a final judgment); *Resolution Trust Corp. v. Keating*, 186 F.3d 1110, 1114 (9th Cir. 1999) (issue preclusion, or collateral estoppel, requires a final judgment). Second, the circumstances surrounding pre-judgment settlement-contingent vacatur and post-judgment vacatur differ markedly. A key inquiry under Rule 60(b) is whether the litigant seeking vacatur mooted the case with the intent that the district court vacate its order. *Dilley v. Gunn*, 64 F.3d 1365, 1372 n.6 (9th Cir. 1995); *see also Am. Games*, 142 F.3d at 1170 (noting that district courts may need to "smoke out subterfuge"). But under Rule 54(b), litigants moving for pre-judgment settlement-contingent vacatur *always* intend that the district court vacate its order; if they did not, they would not condition their settlement upon vacatur. Litigants who request pre-judgment settlement-contingent vacatur make no attempt to hide the fact that they seek to "buy an eraser for the public record" through conditional settlement. *See Am. Games*, 142 F.3d at 1170 (quoting *Mancinelli v. Int'l Bus. Machs.*, 95 F.3d 799, 800 (9th Cir. 1996) (Kleinfeld, J., dissenting)).

Moreover, pre-judgment settlement-contingent vacatur presents serious systemic concerns. For courts, such vacatur presents a Sophie's choice: either vacate the order and nullify the judicial resources spent on it, or preserve the order and expend additional judicial resources as the litigants proceed with the case. It is unclear how allowing litigants to hold district courts captive via such a choice would ever be consistent with "the orderly operation of the federal judicial system." *Bonner Mall*, 513 U.S. at 27. This stands in contrast to post-settlement vacatur under Rule 60(b) where

the case is over, and the district court expends no further resources, whether vacatur is granted or not.

For litigants, pre-judgment settlement-contingent vacatur creates perverse incentives. Institutional litigants, facing the prospect of similar litigation in the future, have an incentive to "buy and bury" decisions unfavorable to their position. *Am. Games*, 142 F.3d at 1170; *Mancinelli*, 95 F.3d at 800 (Kleinfeld, J., dissenting). Opposing litigants who do not have this incentive can use it as an opportunity to obtain higher settlement awards by agreeing to vacatur. Yet pre-judgment settlement-contingent vacatur presents fewer risks to litigants than post-judgment settlement-related vacatur. Litigants who condition their settlements upon vacatur know that the case will only settle if the orders are vacated. Litigants who settle unconditionally, though hoping to obtain post-judgment vacatur, must live with settlement even where vacatur is denied.

Most importantly, the public interest supports holding pre-judgment settlement-contingent vacatur to a higher standard. Judicial opinions are "presumptively correct and valuable to the legal community as a whole." *Bonner Mall*, 513 U.S. at 26–27 (quoting *Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.*, 510 U.S. 27, 40 (1993) (Stevens, J., dissenting)). District court orders "are not merely the property of private litigants" to be used as bargaining chips in settlement negotiations, they exist in part for public benefit and "should stand unless a court concludes that" some other public interest warrants vacatur. *Id.* However, the Court need not hold the parties' motion to a higher standard today as the reasons proffered fail to satisfy even the more lenient equitable balancing test.

**B. Equitable Balancing**

Under the *American Games* equitable balancing test, the Court weighs "the hardships and the public interests at stake." 142 F.3d at 1166. The parties advance three reasons why vacatur is warranted in this case: (1) it would not prejudice any other parties, (2) it would only disturb two interlocutory orders and will not impact any

1  binding precedent, and (3) it would promote settlement. (ECF No. 149, at 6–7.) Though
2  none of these reasons are hardships traditionally weighed by courts under *American*
3  *Games*, the Court will consider them in turn. *See Ringsby*, 686 F.2d at 722 (equitable
4  balancing considers hardships to a litigant that may occur when an unreviewed lower
5  court order obtains preclusive effect); *see also Mancinelli*, 95 F.3d at 800 (Kleinfeld,
6  J., dissenting) (noting that vacatur "might be appropriate if there were some unfair res
7  judicata or issue preclusion effect of the loss, or for some other reason").

### 1. Prejudice

First, the fact that vacatur will not prejudice any other parties is more relevant when it weighs against vacatur. Thus the fact that vacatur will not prejudice any other parties is neutral in this case.

### 2. District Court Orders and Precedent

Second, the parties attempt to downplay the significance of vacatur by referring to their motion as a "[l]imited [r]equest" that, if granted, would "not disturb any other prior rulings or impact any binding precedent." (ECF No. 149-1, at 5, 7.) This argument ignores that vacatur is an "extraordinary remedy," *Bonner Mall*, 513 U.S. at 26, and only disturbing a few interlocutory orders and not impacting binding precedent is always true when district courts grant vacatur under Rule 54(b). Thus the fact that the parties seek vacatur of two interlocutory district court orders does not weigh in favor of vacatur.

### 3. Promoting Settlement

Third, while vacatur may promote settlement at this moment in this case, its general application may discourage settlement as litigants "may think it worthwhile to roll the dice rather than settle . . . if, but only if, an unfavorable outcome can be washed away by a settlement-related vacatur." *See Bonner Mall*, 513 U.S. at 28. As an institutional litigant likely facing future copyright cases, settlement-contingent vacatur would eliminate CafePress's incentive to settle early and avoid potentially unfavorable orders. *See, e.g.*, *Tiki Shark Art Inc. v. CafePress, Inc.*, No. 13-cv-0577-JMS-RLP,

2014 WL 3928799 (D. Haw. Aug. 12, 2014); *Imageline, Inc. v. CafePress.com, Inc.*, No. 10-cv-9794-PSG-MANx, 2011 WL 1322525 (N.D. Cal. Apr. 6, 2011); *see also Mancinelli*, 95 F.3d at 800 (Kleinfeld, J., dissenting).

Moreover, the conservation of resources through settlement would be minimal. This case has already progressed through several rounds of summary judgment, leaving the Court with few legal issues left to decide and only a short trial. *Compare Cuviello*, 2014 WL 1379873, at *3 (granting vacatur prior to the filing of an answer) *with RE2CON*, 2013 WL 1325183, at *4–5 (finding that vacatur after the case concluded would not conserve resources). Vacatur would also nullify the resources previously spent on both orders. *See Tumulty v. FedEx Ground Package Sys., Inc.*, No. 04-cv-1425-P, 2007 WL 896035, at *2 (W.D. Wash Mar. 22, 2007) (citation omitted). As the parties have failed to show that pre-judgment settlement-contingent vacatur would promote settlement in general, this factor does not weigh in favor vacatur.

### 4. Public Interest

The parties' reasons critically fail to consider the public interest. *See Izumi Seimitsu*, 510 U.S. at 40 (Stevens, J., dissenting) ("The public interest in preserving the work product of the judicial system should always at least be weighed in the balance before such a motion is granted."). As discussed above, the systemic implications of granting pre-judgment settlement-contingent vacatur present serious concerns for "the orderly operation of the federal judicial system." *See Bonner Mall*, 513 U.S. at 27. In the face of such interest, the parties do not proffer a single valid hardship that weighs in favor of vacatur. Accordingly, the Court finds that equities in this case do not merit vacatur.

## C. Stay

Because they reached a contingent settlement, the parties further request that the Court stay this litigation and extend several deadlines. (ECF No. 149-1, at 7–8.) While the Court finds no cause to stay this litigation, the Court's denial of the parties' motion to vacate constitutes good cause to extend certain deadlines related to: (1) CafePress's

1  Motion to Dismiss, (ECF No. 122); (2) obtaining post-consolidation scheduling dates;
2  and (3) CafePress's Motion for Summary Judgment, (ECF No. 134). *See* FED. R. CIV.
3  P. 6(b)(1).

## III. CONCLUSION AND ORDER

For the reasons stated above, **IT IS HEREBY ORDERED** that:

1. The parties' Joint Ex Parte Motion and Stipulation to Vacate Prior Rulings in Support of the Parties' Conditional Settlement Agreement, (ECF No. 149), is **DENIED**;

2. An **AMENDED BRIEFING SCHEDULE** is set for CafePress's Motion to Dismiss, (ECF No. 122): any opposition shall be filed on or before **January 23, 2015.** Any reply shall be filed on or before **January 30, 2015.** A hearing is set for **February 13, 2015, at 1:30 p.m.** in Courtroom 2D;

3. The deadline for filing the joint motion to obtain new scheduling dates from the magistrate judge is **EXTENDED** to on or before **January 30, 2015**, (*see* ECF No. 138); and

4. An **AMENDED BRIEFING SCHEDULE** is set for CafePress's Motion for Summary Judgment, (ECF No. 134): any opposition shall be filed on or before **January 30, 2015.** Any reply shall be filed on or before **February 6, 2015.** A hearing is set for **February 20, 2015, at 1:30 p.m.** in Courtroom 2D.

DATED: January 9, 2015

HON. GONZALO P. CURIEL
United States District Judge